IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TARA CURASI,<br><br>　　　　　　Plaintiff,<br><br>-against-<br><br>CONTAMINATION CONTROL ENGINEERING, INC.,<br><br>　　　　　　Defendant. | Case No. 23 Civ. 03376 (PKC) (JRC) |

**FIRST AMENDED COMPLAINT**

Plaintiff Tara Curasi ("Plaintiff" or "Ms. Curasi") by and through her attorneys Kessler Matura P.C., complaining of Defendant Contamination Control Engineering, Inc. ("Defendant" or "CCE"), alleges as follows, as and for her First Amended Complaint:

**INTRODUCTION**

1. CCE is an industrial hygiene and environmental management firm primarily operating in the northeast region of the United States.

2. From October 2018 through February 2022, Ms. Curasi was employed as an Analyst by CCE, reporting to various offices in New York City, including locations in Queens County.

3. Ms. Curasi was a high performing employee; throughout her tenure with CCE, she was given additional responsibilities and received several raises.

4. Over the course of her employment, CCE Supervisor, Terrence O'Neill McDonald ("Mr. McDonald"), Ms. Curasi's direct supervisor, degraded, demeaned, and objectified Ms. Curasi because of her sex.

5. On or about December 9, 2021, Mr. McDonald touched and groped Ms. Curasi without her permission or consent.

6. Prior to being sexually harassed by Mr. McDonald, CCE did not require Ms. Curasi or her colleagues to attend sexual harassment prevention training.

## NATURE OF THE CLAIMS

7. The unlawful discrimination described herein was committed in violation Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), New York State Human Rights Law, N.Y. Executive Law §§ 290, et seq. ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, et seq. ("NYCHRL").

8. Plaintiff previously filed a Charge of Discrimination with the EEOC and was issued a Notice of Right to Sue, dated, April 5, 2023.

9. Following the commencement of this action, a copy of this Complaint will be served on both the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

## JURISDICTION & VENUE

10. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII.

11. The Court has supplemental jurisdiction over Plaintiff's related claims arising under State and local law pursuant to 28 U.S.C. § 1367(a).

12. This action lies properly in the Eastern District of New York, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims herein occurred in the Eastern District of New York.

## THE PARTIES

*Plaintiff Tara Curasi*

13. Ms. Curasi is a 32-year-old woman.

14. Ms. Curasi is a resident of Queens County, New York.

15. At all times relevant, Ms. Curasi was employed by CCE.

16. At all times relevant, Ms. Curasi was an "employee" within the meaning of all relevant statutes.

*Defendant Contamination Control Engineering, Inc.*

17. CCE was and still is a foreign business corporation, authorized to do business in State of New York.

18. CCE's principal place of business was and still is 120 N. Warren Street, Trenton, New Jersey 08608.

19. CCE was and still is doing business in the State of New York.

20. CCE was and still is an "employer" within the meaning of all relevant statutes.

## FACTUAL ALLEGATIONS

*Defendant Created an Abusive Workplace Atmosphere for Ms. Curasi Where She was Demeaned Because of Her Sex*

21. Ms. Curasi was repeatedly subjected to gender discrimination and outrageous forms of sexual harassment while employed by CCE.

22. Prior to the COVID-19 pandemic, Ms. Curasi worked in a male dominated office, and was subjected to offensive and inappropriate language and commentary.

23. For example, Mr. McDonald regularly engaged in conversation with his male colleagues about a time when he publicly humiliated and then fired one of his female subordinates.

24. At other times, Mr. McDonald regularly commented on Ms. Curasi's physical appearance.

25. For example, in or around July 2021, Mr. McDonald picked up Ms. Curasi from an inspection. As soon she got in the car, he told her "you look good," and that she looked like she "lost weight."

26. In the office, Mr. McDonald regularly leered at Ms. Curasi and made frequent comments about how she dressed. Ms. Curasi was so disturbed by Mr. McDonald's comments that she changed her office attire, to hide her shape.

27. At other times, Mr. McDonald initiated conversations about Ms. Curasi's personal dating life.

28. For example, on or about October 28, 2021, Mr. McDonald invited Ms. Curasi out to happy hour with colleagues from the New York City Housing Authority.

29. In front of her male colleagues, Mr. McDonald informed Ms. Curasi that he did not approve of her partner and that she could "do better."

30. When he was not making comments about her physical appearance or questioning Ms. Curasi about her dating life, Mr. McDonald frequently and harshly scolded Ms. Curasi, demeaning her intelligence.

31. Regularly, Mr. McDonald flew into a rage and he used vulgar and gender-based slurs; he would often say, "fuck" or "fucking cunt."

32. On or about April 19, 2021, Ms. Curasi received additional duties, which required her to review other analysts' work, train analysts, and assign out work to analysts.

33. After Ms. Curasi was given the additional duties, Mr. McDonald struggled – he did not like that she had the authority to direct others.

34. Mr. McDonald regularly undermined Ms. Curasi's authority by telling subordinates to ignore her directives.

35. On one occasion, Mr. McDonald berated Ms. Curasi in front of her subordinates. He asked Ms. Curasi "what the fuck is wrong with you" and "what the fuck is wrong with your head?".

36. On or about April 27, 2021, Ms. Curasi complained to Steven Mania, CCE's President, about Mr. McDonald's abusive conduct and language.

37. Mr. Mania did not take Ms. Curasi's complaint seriously, stating, "I thought he only spoke to me like that!"

38. Despite Ms. Curasi's complaint, Mr. Mania did nothing to stop Mr. McDonald's abusive and unlawful conduct.

39. As a result of Mr. Mania's failure to properly address her complaint, Ms. Curasi was left to deal with Mr. McDonald on her own, and made to feel like CCE did not care about Mr. McDonald's conduct or the impact it was having on her.

***Defendant Created a Sexually Charged Atmosphere for Ms. Curasi Where She was Touched and Groped Without Permission or Consent***

40. Mr. McDonald's offensive conduct culminated on December 9, 2021, when he made a slew of degrading comments to Ms. Curasi after a company holiday party, in Long Island City, New York.

41. The conversation was professional until Mr. McDonald began discussing Ms. Curasi's personal life. Mr. McDonald informed Ms. Curasi that she "dated losers."

42. Mr. McDonald leaned in close to Ms. Curasi and stated, "you look really good in the dress you're wearing tonight" and proceeded to squeeze Ms. Curasi's waist and then her shoulder.

5

43. Mr. McDonald leaned in closer, and he put his arm around Ms. Curasi and said, "you know I'm the reason you got that raise," and stated she was hired because she was "hot."

44. Mr. McDonald squeezed Ms. Curasi's waist a second time and let his hand linger. Uncomfortable, Ms. Curasi excused herself from the bar and waited outside for her rideshare to arrive.

45. As she waited, Mr. McDonald followed Ms. Curasi outside, pulled her arm and said "no – don't get a car home alone." Mr. McDonald then grabbed Ms. Curasi's waist and kissed her.

46. Despite removing herself from the situation, Mr. McDonald's harassment continued, he repeatedly called Ms. Curasi's cellphone.

47. After four missed calls, Ms. Curasi answered her phone to stop Mr. McDonald from calling further. Undeterred, Mr. McDonald took the opportunity to tell Ms. Curasi, "we gotta do that again."

48. On or about December 10, 2021, Ms. Curasi took off from work because she was traumatized by what happened the previous night.

49. On or about December 11, 2021, Ms. Curasi called Mr. Mania and informed him of Mr. McDonald's harassment. Mr. Mania asked, "what do you want me to do about it?"

50. On or about December 13, 2021, Ms. Curasi had a follow-up call with Mr. Mania. During the call he informed Ms. Curasi "if nothing else we are going to draft a policy of some sort, that is kinda compliant with today's standards, when it comes to matters of this type."

51. During the call Ms. Curasi asked Mr. Mania what would happen next. Mr. Mania informed Ms. Curasi that "the first step is to put this in front of experts and get their guidance on the process."

52. CCE did not reprimand Mr. McDonald for his unrelenting sexual harassment.

53. In or around January 2022, for the first time in her employment, CCE required Ms. Curasi and Mr. McDonald to attend sexual harassment prevention training.

54. On or about February 2, 2022, Ms. Curasi resigned from CCE.

## FIRST CAUSE OF ACTION
### Sex Discrimination – Hostile Work Environment
### A Title VII Violation

55. Plaintiff, reiterates and re-alleges each and every allegation in all of the preceding paragraphs.

56. By the actions described above, among others, Defendant discriminated against Plaintiff on the basis of sex in violation of Title VII.

57. By the acts and practices described above, including but not limited to creating a hostile work environment for Plaintiff because of her sex and ignoring her complaints of discrimination, Defendant violated Title VII.

58. Defendants have discriminated against Plaintiff on the basis of her sex in violation of Title VII by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a discriminatory environment that has included, among other things, severe or pervasive discrimination committed against Plaintiff based on her sex.

59. The harassment Plaintiff endured was severe or pervasive and altered the conditions of her employment.

60. Defendants knew or should have known of the discrimination and failed to remedy it.

61. As a direct and proximate result of Defendant's unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

62. Defendant's unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under Title VII.

**SECOND CAUSE OF ACTION**
**Sex Discrimination – Hostile Work Environment**
**A NYSHRL Violation**

63. Plaintiff, reiterates and re-alleges each and every allegation in all of the preceding paragraphs.

64. By the actions described above, among others, Defendant discriminated against Plaintiff on the basis of sex in violation of the NYSHRL.

65. Defendant treated Plaintiff less well than other employees on the basis of her sex.

66. Defendant, through its own conduct including that of its agents, managers, supervisors, and employees, intentionally discriminated against Plaintiff on account of her sex, in violation of the NYSHRL.

67. As a direct and proximate result of Defendant's unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

68. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

69. Defendant's unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYSHRL for which Plaintiff is entitled to an award of punitive damages.

### THIRD CAUSE OF ACTION
### Sex Discrimination – Hostile Work Environment
### A NYCHRL Violation

70. Plaintiff, reiterates and re-alleges each and every allegation in all of the preceding paragraphs.

71. By the actions described above, among others, Defendant discriminated against Plaintiff on the basis of sex in violation of the NYCHRL.

72. Defendant treated Plaintiff less well than other employees on the basis of her sex.

73. Defendant, through its own conduct including that of its agents, managers, supervisors, and employees, intentionally discriminated against Plaintiff on account of her sex, in violation of the NYCHRL.

74. As a direct and proximate result of Defendant's unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

75. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

76. Defendant's unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## DEMAND FOR JURY TRIAL

77. Plaintiff demands a trial by jury for all issues in this action.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Tara Curasi demands that a judgment be entered in her favor and that the Court order and award Plaintiff the following relief against Defendant:

A. A judgment that the actions, conduct, and practices of Defendant complained of herein violates Title VII, the NYSHRL, and the NYCHRL.

B. An award of damages against Defendant, in an amount to be determined at trial, plus interest, for all compensatory damages, including, but not limited to, compensation for Plaintiff's emotional distress;

C. An award of punitive damages in an amount to be determined at trial;

D. Pre-judgment interest on all amounts due;

E. An award of Plaintiff's reasonable attorneys' fees and costs; and

F. Such other and further relief as the Court may deem just and proper.

Dated: Melville, New York
May 17, 2023

Respectfully submitted,

By: /s/ Troy L. Kessler
Troy L. Kessler

**KESSLER MATURA P.C.**
Troy L. Kessler
Jocelyn Small
534 Broadhollow Road, Suite 275
Melville, NY 11747
(631) 499-9100
tkessler@kesslermatura.com
jsmall@kesslermatura.com

*Attorneys for Plaintiff*